**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 15th day of October, 2013.**



_____
Robert D. Berger
United States Bankruptcy Judge
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

**In re:**

**AARON GRANT BUERGE,**
      **Debtor.**

Case No. 11-20325

---

**ERIC C. RAJALA, CHAPTER 7 TRUSTEE,**
      **Plaintiff,**

      v.

**LIBERTY BANK,**
      **Defendant.**

Adv. No. 13-6015

---

### MEMORANDUM OPINION AND ORDER
### GRANTING, IN PART, AND DENYING, IN PART,
### DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Defendant Liberty Bank's Motion to Dismiss.[1] The motion seeks to dismiss the Adversary Complaint filed by Eric C. Rajala, Chapter 7 Trustee, on

---

[1] Doc. 9.

13.10.15-A Buerge MTD Liberty Bank.wpd

the basis that the Trustee lacks standing to bring this action. These matters constitute core proceedings over which the Court has the jurisdiction and authority to enter a final order.[2]

## I.    Background and Findings of Fact

Debtor, Aaron Grant Buerge, filed for relief under Chapter 7 of the Bankruptcy Code on February 11, 2011. On the petition date, Aaron was the owner of 306.47 shares of stock in a family-owned bank holding company known as Buerge Bancshares, Inc. ("BBI"), and 132.64225 shares of stock in a second family-owned bank holding company known as Financial Enterprises, Inc. ("FEI"). In Aaron's main bankruptcy proceeding, Liberty Bank filed two secured proofs of claim—Proof of Claim No. 6 in the amount of $681,697.01 and Proof of Claim No. 7 in the amount of $649,647.46. Liberty Bank alleges that its secured interest arises under Commercial Security Agreements executed by Aaron on October 1, 2010. Liberty contends that its claims are secured by a pre-petition security interest and lien in FEI Certificate #53 which represents 122.64225 shares of FEI stock, FEI Certificate #57 which represents 6 shares of FEI stock, BBI Certificate #121 which represents 67.63 shares of BBI stock, BBI Certificate #74 which represents 108.99 shares of BBI stock, BBI certificate #4 which represents 17 shares of BBI stock, and BBI Certificate #99 which represents 0.24 shares of BBI Stock.

The BBI and FEI stock are subject to certain restrictions on their transfer, as set forth in the Stock Purchase Agreement ("SPA") signed by Debtor and BBI and FEI. The SPA places the following restrictions on the transfer of the BBI and FEI stock owned by Aaron:

(1)    Section 2(a) provides that stockholders may not "sell, assign, transfer, pledge or otherwise dispose of or encumber, by sale, gift, will or

---

[2] *See* 28 U.S.C. § 157(b)(2)(B), (E) and (K) (core proceedings) and § 157(b)(1) (authority to hear core proceedings).

> otherwise, any stock of the Corporation except in accordance with this Agreement."

(2) Section 2(b) provides that a stockholder must offer to sell the shares to the Corporation before disposing of them. Section 4 provides the procedures for offering shares to the Corporation. Such procedures include providing written notice of the offer and granting 30 days during which the Corporation could exercise its option.

(3) Section 2(a) provides that any purported disposition prohibited by the SPA "shall be void and ineffective."

(4) Section 7(a) provides that no disposition is effective unless such transfer is in compliance with the SPA and any attempted disposition of stock in violation of the SPA "shall be null and void *ab initio*."[3]

According to the Trustee, Aaron did not comply with the terms of the SPA prior to pledging the stock as security for the loan from Liberty Bank. Specifically, the Trustee claims that Aaron did not offer to sell the stock to BBI or FEI before pledging it to Liberty Bank; did not provide written notice to BBI or FEI of his intent to pledge the BBI and FEI stock as collateral to Liberty Bank; did not grant BBI or FEI 30 days during which BBI could exercise its option to purchase the stock; and "did not comply with any of the other terms, conditions, and procedures required under the SPA in order to effectuate a valid transfer of a security interest in the BBI and FEI Shares to Liberty Bank."[4]

The shares of BBI and FEI owned by Aaron were part of prior litigation in Aaron's main bankruptcy case. In Aaron's main bankruptcy case, he sought an order requiring the Trustee to

---

[3] Complaint, Doc. 1 at 3.
[4] *Id.* at 4. The SPA has not been provided to the Court, so the Court is unable to determine whether there are any other "terms, conditions, and procedures" under the SPA that may apply to this matter. However, given the current posture of this case and the fact that it is before the Court on a motion to dismiss, the Court will assume that the Trustee is correct in his assertions concerning Aaron's failure to comply with the SPA, without actually deciding that a violation of the SPA has occurred. The question of whether Aaron and Alden complied with the SPA does not need to be determined in the context of this motion to dismiss.

abandon the estate's interest in the shares of BBI and FEI on the basis that any potential sale of the stock would be difficult and costly and that any potential profits from such sale would provide an inconsequential benefit to general unsecured creditors. On September 6, 2012, the Court granted Aaron's motion and ordered the Trustee to abandon all interest in the stock held by Aaron in BBI and FEI.[5]

Section 554(b)[6] provides that any party-in-interest may move the court to compel abandonment of property of the estate. Such a motion is a contested matter under Federal Rule of Bankruptcy Procedure 9014[7] and is governed by Rule 6007. Notice and hearing is required. In Aaron's main case, the Court conducted an extensive hearing and considered evidence with regard to whether the assets ordered abandoned were "burdensome to the estate or . . . of inconsequential value and benefit to the estate."[8] In this case, the Debtor's motion to abandon was opposed by the Chapter 7 Trustee and by the largest creditor of the estate. If a motion for abandonment is opposed by parties-in-interest, then it is the movant who has the burden of proof. However, "the party opposing the request that property be abandoned must show some likely benefit to the estate; mere speculation about possible scenarios in which there might be a benefit is not sufficient."[9] Since it was the Debtor who sought abandonment of the assets, it was

---

[5] *In re Buerge*, 479 B.R. 101 (Bankr. D. Kan. 2012). The Court's order directing abandonment of the shares of BBI and FEI stock has been appealed to the 10th Circuit Bankruptcy Appellate Panel, where it is currently pending. The BAP has, however, denied the Trustee's motion to stay enforcement of the order requiring abandonment of the stock interests while the appeal is pending. *Rajala v. Buerge*, No. 13-24, Doc. 30 (B.A.P. 10th Cir. filed May 17, 2013).

[6] This and all future statutory references are to the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532, unless otherwise specifically noted.

[7] All future references to Rules are to the Federal Rules of Bankruptcy Procedure, unless otherwise specifically noted.

[8] *See* § 554(b).

[9] 5 COLLIER ON BANKRUPTCY ¶ 554.02[3] at 554-7 to 554-8 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2013).

incumbent upon the Debtor to provide adequate notice to the parties-in-interest, the latter of whom had the right to object to an order directing abandonment by the Trustee. A three-day evidentiary hearing was conducted to determine whether the Court should approve the Trustee's proposed sale of the assets or whether the Debtor's motion for an order directing abandonment by the Trustee should be granted. This detailed procedure stands in stark contrast to the short circuit removal of certain personal property, and relief from the automatic stay relating thereto, under the limited provisions of § 362(h)(1) relied upon by the Trustee.

The effect of abandonment of estate assets under § 554 is that "the trustee is divested of control of the property because it is no longer a part of the estate. Thus, abandonment constitutes a divesture of all of the estate's interests in the property. Property abandoned under section 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed."[10] Abandonment is effective retroactively to the petition date as if the debtor were its owner during the pendency of this bankruptcy.[11] With the exception of property that is successfully exempted by the debtor, the bankruptcy court loses subject matter jurisdiction over property of the estate upon abandonment.[12] Abandoned property is out of the reach and control of the trustee; it becomes property of the debtor's non-bankruptcy estate as if the bankruptcy had not been filed by the debtor.[13] In effect, "abandonment occurs nunc pro tunc to the petition date, so that the debtor is treated as having owned the property continuously."[14] The consequence of

---

[10] *Id.* at 554-6.
[11] 4 WILLIAM L. NORTON, JR., AND WILLIAM L. NORTON III, NORTON BANKRUPTCY LAW AND PRACTICE § 74:1 at 74-4 (3d ed. 2013).
[12] *Id.*, § 74:2 at 74-5 to 74-6; 5 COLLIER ON BANKRUPTCY ¶ 554.02[3] at 554-6.
[13] 4 NORTON BANKRUPTCY LAW AND PRACTICE ¶ 74:2 at 74-6.
[14] *Id.*, § 74-1 at 74-4.

- 5 -

13.10.15-A Buerge MTD Liberty Bank.wpd

abandonment under § 554 is clear: "The estate has no interest in, and does not administer, abandoned property."[15]

The Trustee initiated this adversary proceeding seeking to invalidate Liberty Bank's purported security interest in the shares of BBI and FEI stock, and to require turnover of the stock certificates for BBI and FEI stock owned by Aaron that are purportedly in Liberty Bank's possession. The Trustee also seeks to avoid the transfer of the security interest in the stock to Liberty Bank as a fraudulent transfer, and to deny the claims of Liberty Bank.

**II.    Analysis**

The Complaint in this adversary proceeding includes five separate counts.  Liberty Bank has moved to dismiss the entire Complaint based upon a lack of standing.  "Dismissal for a lack of standing is jurisdictional, and thus is properly brought under Fed. R. Civ. P. 12(b)(1)."[16] When considering a motion to dismiss based upon a lack of standing, the Court "must accept as true all material allegations of the complaint [ ] and must construe the complaint in favor of the complaining party."[17]  As the party seeking to invoke federal jurisdiction, the Trustee bears the burden to establish standing.[18] However, at this stage of the proceedings, the Trustee's burden is "lightened considerably."[19]

---

[15] *In re Dewsnup*, 908 F.2d 588, 590-91 (10th Cir. 1990), *aff'd sub nom. Dewsnup v. Timm*, 502 U.S. 410 (1992).

[16] *Hamilton v. Washington Mutual Bank, FA (In re Colon)*, 345 B.R. 723, 726 (Bankr. D. Kan 2005).

[17] *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

[18] *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012).

[19] *Id.*

### A. The Trustee Lacks Standing to Pursue Count I of the Complaint.

Count I of the Complaint seeks a determination that Liberty Banks's security interest in the BBI and FEI shares is invalid and void. The Trustee alleges that, due to the restrictions on the transfer of the BBI and FEI stock imposed by the SPA, Debtor's attempt to pledge his stock as security for the loans from Liberty Bank was void *ab initio*. Specifically, the Trustee cites to Section 2(a) of the SPA, which provides that stockholders "will not sell, assign, transfer, pledge or otherwise dispose of or encumber by sale, gift, will or otherwise, any stock of [BBI and FEI] except in accordance with this Agreement." Section 2(b) of the SPA states that prior to disposing of any stock, a stockholder must provide written notice to BBI and FEI of an offer to sell the shares back to the corporation. Sections 2(a) and 7(a) of the SPA both provide that any purported sale or disposition of shares of stock that are not in compliance with the SPA are void.[20] According to the Trustee, because Aaron did not offer to sell the shares back to BBI and FEI, by providing 30 days written notice of such an offer, his pledge of the stock as collateral for a loan from Liberty Bank was ineffective and void.

As an aside, one would question whether the Trustee would succeed in this claim, even if he were to establish standing and prove that Aaron and Liberty Bank did not comply with the SPA when Aaron hypothecated the stock. In a closely held corporation the SPA exists to protect other shareholders and the corporation, and it is they who would have standing to seek a remedy to redress such non-compliance. As observed by a leading treatise:

> Restrictions on the transfer of stock or stock rights, including pledges, can be part of the corporate charter, articles of incorporation or the stock offering itself.

---

[20] Section 2(a) states that any purported disposition prohibited by the SPA "shall be void and ineffective," and Section 7(a) states that any disposition that is not in compliance with the SPA "shall be null and void *ab initio*."

- 7 -

13.10.15-A Buerge MTD Liberty Bank.wpd

These restrictions are normally used to protect closely held corporations so that control will not pass to unknown or undesirable partners. The restrictions usually apply to transfers, but pledges may also be included.[21]

From a policy perspective, restrictions on the transfer or pledge of stock in a closely held corporation are designed to bring predictability as to business associates and to insure that the stockholders are acceptable to the other shareholders in the corporation.[22] Restrictions are also designed to preserve corporate and tax attributes and to allow the closely held corporation to refuse to issue or register a stock in the name of the pledgee or transferee.[23]

Liberty Bank claims that the Trustee lacks standing to pursue this claim because the BBI and FEI shares have been abandoned. Although Liberty Bank does not specifically address each claim set forth in the Complaint, Liberty Bank generally argues that because the Court has ordered Aaron's stock interests in BBI and FEI abandoned by the estate, the Trustee has no standing to pursue the claims.

In order to establish standing necessary to bring an action in federal court, a party must show three things:

> (1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court"; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of

---

[21] 12A WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5637.20 at 498 (perm. ed., rev. vol. 2009) (citations omitted).
[22] *See* KANSAS CORPORATION LAW & PRACTICE, § 11.05 at 11-2 (Steven A. Ramirez, ed., 1998), discussing Kansas law.
[23] Tax considerations were of particular relevance to BBI because it had made a Subchapter S tax election.

- 8 -

13.10.15-A Buerge MTD Liberty Bank.wpd

obtaining relief from the injury as a result of a favorable ruling" is not "too speculative."[24]

The burden is on the Trustee to establish that he has standing to pursue this action.[25]

The Court agrees with Liberty Bank and finds that the Trustee lacks standing to pursue this claim. Count I of the Complaint alleges that the purported security interest claimed by Liberty Bank in the BBI and FEI stock owned by Aaron on the date of filing is ineffective and void. If the Trustee were successful in establishing that the transfer was not in accordance with the SPA and is void, the Trustee stands to gain nothing from such a victory. Whether a valid lien is attached to the BBI and FEI shares at this point has no impact on any interests of the bankruptcy estate because the estate has no interest in those shares. With the property already abandoned from the estate, a ruling that the BBI and FEI shares owned by Aaron are not subject to a lien by Liberty Bank would not redress any potential injury to the bankruptcy estate. Therefore, the Court finds that the Trustee lacks standing to seek a ruling that the alleged security interest held by Liberty Bank in the BBI and FEI shares is void.

### B. The Trustee Lacks Standing to Pursue Count II of the Complaint.

Count II of the Complaint seeks to avoid the alleged security interest held by Alden in the BBI shares for the benefit of the bankruptcy estate pursuant to the Trustee's strong arm powers.

The Bankruptcy Code provides a Chapter 7 bankruptcy trustee with the power to void liens against property that are unperfected when the petition is filed and to preserve those liens

---

[24] *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1101 (10th Cir. 2001) (quoting *Northeastern Fla. Chapter of the Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 663-64 (1993)).

[25] *Northeastern Chapter of Associated Gen. Contractors*, 508 U.S. at 663 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

- 9 -

13.10.15-A Buerge MTD Liberty Bank.wpd

for the benefit of the bankruptcy estate.[26] Once a lien is voided under 11 U.S.C. § 544, the lien is automatically preserved for the benefit of the estate under § 551. Also, the Trustee may seek recovery under § 550(a) which provides that to the extent a transfer is avoided under § 544, the Trustee may recover the property transferred or the value of such property from the initial transferee.[27]

The Trustee attempts to establish his standing to pursue this claim by arguing that his power to avoid unperfected liens extends not only to property of the estate, but also to property that once was, but no longer remains, property of the estate. According to the Trustee, § 544(a) authorizes him to avoid transfers of property of the estate and transfers of property of the debtor. The Trustee relies upon *In re Colon*,[28] which held that the Chapter 13 trustee's strong arm powers extend to all of the debtors' property on the petition date, even if the property is later removed from the estate through the exemption process, and *In re Mollison*,[29] which held that the trustee's avoiding powers are not limited by the removal of property from the estate pursuant to § 362(h)(1). The Trustee's reliance on these cases is misplaced.

*Colon* was a Chapter 13 proceeding in which the debtors' confirmed plan specifically retained for the trustee the right to avoid a residential mortgagee's lien. Under Kansas law, a debtor's residence is, subject to certain limitations not applicable in *Colon*, fully exempt regardless of value. The Kansas homestead is not an estate; it is a constitutional right

---

[26] *In re Roser*, 613 F.3d 1240, 1243 (10th Cir. 2010). *See also* 11 U.S.C. § 544(a) (trustee's avoidance power) and § 551 (preservation of voided liens for the benefit of the bankruptcy estate).
[27] *See* § 550(a)(1).
[28] 345 B.R. 723, 726 (Bankr. D. Kan. 2005).
[29] 463 B.R. 169, 188 (Bankr. D. Mass. 2012).

13.10.15-A Buerge MTD Liberty Bank.wpd

implemented as an exemption that is remedial in nature.[30]  Upon allowance of the homestead exemption, the debtors' residence was no longer property of the bankruptcy estate.

In *Colon*, the order confirming the debtors' plan also provided that property of the debtors' bankruptcy estate would revest in the debtors at the end of the case "after approval of the Trustee's Final Report and Account by the Court."[31]  Judge Karlin observed that in a Chapter 13 bankruptcy when property revests in the debtor that the Chapter 13 trustee probably does not have standing in a proceeding that does not benefit any of the creditors of the estate.[32]  Although the effect of an allowed exemption is to remove the subject property from the bankruptcy estate, this does not impair the trustee's, or for that matter the debtor's, ability to exercise avoidance powers under the Bankruptcy Code.[33]  For example, by its very nature, a § 522(f) motion seeks to avoid liens that impair a debtor's interest in exempt property.

*Colon* considers trustee avoidance rights preserved by a confirmed Chapter 13 plan with respect to property of the debtors that was properly exempted.  In contrast, the case *sub judice* involves the abandonment of property under § 554, which entails a different process, result and effect.  Here, this Court no longer has subject matter jurisdiction over the abandoned property, and the Trustee is divested of all control or interest in the property because it is no longer property of the bankruptcy estate.  As noted, abandonment does not divest this Court of jurisdiction to enforce the debtor's right to claim an exemption under § 522; again, one

---

[30] *See* KS. CONST. art. 15, § 9, and KAN. STAT. ANN. § 60-2301 (2012).
[31] *Colon,* 345 B.R. at 727.
[32] *Id.* at 727, citing to 1 KEITH L. LUNDIN, CHAPTER 13 BANKRUPTCY § 60.1 at 60-4 (3d ed. 2004).
[33] *Id.* at 726; *Bennett v. Commercial Credit Plan (In re Bennett)*, 13 B.R. 643, 645 (Bankr. W.D. Mich. 1981); *see also* § 522(f) for an example of debtor's specific avoidance rights as to exempt property.

- 11 -
13.10.15-A Buerge MTD Liberty Bank.wpd

Case 13-06015   Doc# 18   Filed 10/15/13   Page 11 of 19

encounters the distinction between property that is removed from the bankruptcy estate as exempt and property which is abandoned from the bankruptcy estate under § 554.

The Trustee's reliance on *In re Mollison* is also misplaced. *Mollison* evaluates the effect of § 362(h) (which was added as part of the 2005 amendments). Section 362(h) effects removal of certain personal property from a debtor's bankruptcy estate *sans* notice with opportunity for hearing and *sans* an evidentiary hearing. Section 362(h)(1) is limited and only applies "with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails to comply" with the applicable filing requirements of § 521(a)(2) and to timely comply with such statement of intention.[34]

In some measure, § 362(h) is a partial codification of pre-2005 amendment law wherein some courts held that the debtor's failure to comply with her statement of intention entitled the secured creditor to seek by motion and to procure relief from the automatic stay as to the subject property.[35] Section 362(h) was added to the Code to provide teeth to enforce a debtor's compliance with her statement of intention filed pursuant to § 521(a)(2); prior to the amendment, the statutory mechanism for enforcement fell upon Chapter 7 trustees, who were generally hesitant to insure a debtor's compliance.[36] The 2005 amendments to § 521 "arguably did nothing to change the result of earlier cases which held that a debtor could retain property subject to a security interest if the debtor remained current on payments and other contract obligations.

---

[34] 3 COLLIER ON BANKRUPTCY ¶ 362.11 at 362-137 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2013).

[35] *See* 1 HENRY J. SOMMER, ET AL., CONSUMER BANKRUPTCY LAW AND PRACTICE § 11.4.2.3 at 270-71 (10th ed. 2012).

[36] *See* § 704(a)(3); please note that this section was not changed in the 2005 amendments and erroneously refers to the pre-amendment section and not to the redesignated section 521(a)(2)(B).

- 12 -

13.10.15-A Buerge MTD Liberty Bank.wpd

Case 13-06015    Doc# 18    Filed 10/15/13    Page 12 of 19

Those cases were based on the plain language of the Code, which in all material respects is unchanged."[37] The legislative history does not indicate that Congress intended to change the pre-amendment law. "Indeed, because the provisions are limited to secured debts and leases involving personal property, the 2005 amendments strengthen the argument that a debtor has a right to continue payments on debts secured by real property and retain the property without reaffirming."[38] However, there is case law contrary to this interpretation.[39]

In contrast to §362(h), under § 554(a) it is the trustee who seeks abandonment of property of the bankruptcy estate, and under § 554(b) a party-in-interest seeks such abandonment. Abandonment under § 554(c) allows for a technical abandonment at the time of the closing of a case, unless the court orders otherwise.[40] It has been commented that removal of property from the bankruptcy estate under § 362(h) may occur as early as 30 days after the date the petition is filed if the debtor failed to comply with § 521(a)(2)(B). This deadline can predate both the initial setting for a § 341 meeting and a trustee's meaningful inquiry as to the debtor's assets and alleged encumbrances on these assets.[41] Some courts have analogized the removal of property from the estate under § 362(h)(1) to the abandonment of estate property under § 554.[42] However, these are separate statutes with different functions and purposes. Ultimately, the

---

[37] *See* 1 CONSUMER BANKRUPTCY LAW AND PRACTICE § 11.4.2.1 at 269.
[38] *Id.*
[39] *Id.*, § 11.4.2.3 at 270, 271 and § 11.4.2.5 at 273.
[40] Brendan Gage, *Why Technical Abandonment is Far from Technical*, AMERICAN BANKRUPTCY INSTITUTE JOURNAL, July 2013, at 56.
[41] The trustee has a short period of time under § 362(h)(2) within which to file a motion to avoid the effects of § 362(h)(1). For contrasting views on §362(h) and its effects, *see* Wendell J. Sherk, *Section 362(h) Deprives a Trustee of Property of the Estate*, AMERICAN BANKRUPTCY INSTITUTE JOURNAL, October 2011, at 42; and Neil C. Gordon, *Section 362(h) Does Not Deprive a Trustee of Standing to Avoid a Lien*, AMERICAN BANKRUPTCY INSTITUTE JOURNAL, December/January 2011, at 50.
[42] *See Mollison*, 463 B.R. at 186, collecting cases.

13.10.15-A Buerge MTD Liberty Bank.wpd

holding in *Mollison* is limited in that the court only concluded that the "Trustee's § 544(a)(1) avoiding power is not limited by the removal of property from the estate pursuant to § 362(h)(1)."[43] *Mollison* interprets § 362(h)(1), which is not applicable here. What is pertinent is the abundance of case law that once a trustee abandons property under § 554, the bankruptcy court no longer has jurisdiction over that property, and the trustee has neither control of the property nor the right to employ avoidance powers relating thereto. Even the court in *Mollison* acknowledges the ample case law that supports this notion: A "trustee's status as [a] hypothetical lien creditor under § 544 attaches as of the commencement of the case and terminates when the property is no longer property of the estate."[44]

In order to have standing to pursue this claim, the Trustee must show that, if successful, the estate stands to benefit in some manner from the cause of action. In strong-arm avoidance actions under § 544, Chapter 7 trustees seek to avoid unperfected—but otherwise valid—liens that are attached to property of the debtor. "[U]pon avoidance of a lien, . . . the trustee 'steps into the shoes of the former lienholder, with the same rights in collateralized property that the original lienholder enjoyed.'"[45] Unlike a typical avoidance action, Count III in the Complaint does not allege that Alden holds a valid security interest that was not perfected, or was improperly perfected, on the date of filing. Instead, the Trustee alleges that the purported lien never attached to the property at all.

---

[43] *Mollison*, 463 B.R. at 188.
[44] *Mollison*, 469 B.R. at 187 n.19 (internal quotations omitted), citing, among other cases, *Old West Annuity & Life Ins. Co. v. The Apollo Group*, 605 F.3d 856, 863 (11th Cir. 2010).
[45] *In re Trout*, 609 F.3d 1106, 1110 (10th Cir. 2010) (quoting *In re Haberman*, 516 F.3d 1207, 1210 (10th Cir. 2008)).

- 14 -

13.10.15-A Buerge MTD Liberty Bank.wpd

Avoiding a valid, but unperfected, lien can provide benefit to the bankruptcy estate by allowing the Trustee to step into the shoes of the lienholder. However, a proceeding to show that a lien never attached to property—and is, therefore, not only unperfected but also essentially invalid and entirely worthless—is of no value to the estate when the property potentially tied to the lien is not property of the estate. Because the property has been abandoned and now belongs solely to Aaron, he would have standing to bring an action such as is found in Count III. Aaron would benefit from a finding that the lien never attached to the property. Unfortunately for the Trustee, the estate would not reap such a benefit and, therefore, lacks standing.

### C. The Trustee Has Standing to Pursue Count III of the Complaint and Count III Is Not Dismissed.

Count III of the Complaint seeks to avoid Liberty Bank's claim as a fraudulent transfer under § 548 and recover the lien for the benefit of the bankruptcy estate under § 550(a). In order to prevail on a claim under § 548, the Trustee must show that, within 2 years of the filing of the petition, Aaron (1) transferred an interest in his property with the actual intent to hinder, delay, or defraud an entity to which Aaron was or became indebted; (2) received less than a reasonably equivalent value for the transfer; and (3) was insolvent at the time of the transfer, became insolvent as a result of the transfer, was engaged in a business or transaction for which any property remaining with him was an unreasonably small capital, or intended to incur debts that would be beyond his ability to pay as they matured.[46] If the Trustee is successful in avoiding or setting aside a transfer under § 548, then he is allowed to recover the transferred property, or its

---

[46] 11 U.S.C. § 548(a)(1).

value, from the transferee unless the transferee took the transfer for value, in good faith, and without knowledge of the voidability of the transfer that is avoided.[47]

Liberty Bank's motion to dismiss does not specifically address Count III or the Trustee's standing to pursue this claim. Instead, the motion to dismiss claims that Trustee "lacks standing to request a determination of the validity, priority, and extent of liens with respect to the stock at issue, as the stock is no longer property of the estate." In addition, Liberty Bank claims that "the Trustee cannot prevail in its request that Liberty Bank turnover [the] BBI and FEI shares since the stock is abandoned and no longer property of the estate."

The Court finds that the motion to dismiss must be denied as to this claim. The Trustee is not seeking to determine the validity, priority or extent of the lien held by Liberty Bank in this claim. The Trustee is also not seeking turnover of the abandoned stock. Instead, the Trustee is seeking to avoid an allegedly fraudulent transfer, and recover the value of that transferred property interest for the benefit of the estate. The fact that Aaron's interest in the stock has been abandoned by the Trustee does not affect the Trustee's standing because the stock does not have to be property of the estate for the Trustee to pursue the claim. In fact, § 548 causes are brought specifically to recover property that is not property of the estate. And, although the Trustee was ordered to abandon Aaron's interest in the stock because it was of inconsequential value to the estate, the Trustee is seeking to recover the security interest held by Liberty Bank, not the actual stock itself. Whether the security interest is of sufficient value to the estate for the Trustee to administer is not before the Court at this time. The only issue raised by Liberty Bank is whether the Trustee has standing to pursue this § 548 action to recover an allegedly fraudulent transfer.

---

[47] 11 U.S.C. § 550(a) and (b).

13.10.15-A Buerge MTD Liberty Bank.wpd

The Court finds he does. To the extent that the Trustee does not seek to recover property previously abandoned, the Trustee's § 544 action arising under the Uniform Fraudulent Transfer Act is not dismissed.

### D. The Trustee Lacks Standing to Pursue Count IV of the Complaint Based Upon the Court's Prior Rulings.

Count IV of the Complaint seeks turnover of the BBI and FEI shares that the Trustee claims are in the possession of Liberty Bank. The Trustee contends that Liberty Bank is in possession of these stock certificates and should be compelled to turn them over pursuant to § 542(a). Under § 542, a bankruptcy trustee has the authority to compel turnover of any property that the trustee may use, sell, or lease under § 363 of the Bankruptcy Code. However, in this case the Court ordered the Trustee to abandon any interest the estate has in the shares of BBI that are owned by Aaron. Once that property was abandoned, it was no longer property of the estate and no longer fell within the reach of the Trustee under § 542(a).[48] The Trustee lacks standing to bring an action against property which has been abandoned by the estate, so Count IV must be dismissed.[49]

### E. Count V of the Complaint Is Not Dismissed.

In Count V of the Complaint, the Trustee seeks an order disallowing any claim asserted by Liberty Bank, including Claims 6 and 7 which have already been filed, pursuant to § 502(d).

---

[48] *See Dewsnup*, 908 F.2d at 590.
[49] Although the Court has found that Count IV can be dismissed based upon the Trustee's lack of standing, the Court notes that the claim may also be dismissed based upon a failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), which is made applicable in this adversary proceeding pursuant to Fed. R. Bankr. P. 7012(b), as well. The Trustee is seeking turnover of property that is no longer property of the estate. Nothing in § 542 authorizes the Trustee to seek turnover of property in which the estate no longer holds an interest. In addition, the Court understands that at least a portion of the stock in question has now been sold by Aaron, rendering the Trustee's claim to turnover of that stock even more remote.

13.10.15-A Buerge MTD Liberty Bank.wpd

Under that section , the Court is required to "disallow any claim of any entity from which property is recoverable under section 542 . . . or that is a transferee of a transfer avoidable under section . . . 548 . . . unless such entity or transferee has paid the amount, or turned over such property, for which such entity or transferee is liable under section 522(I), 542, 543, 550 or 553" of the Bankruptcy Code.

Count V is dependent upon the Trustee successfully prosecuting one of the other claims in this action. If the Trustee is successful in avoiding the transfer of the security interest in the stock pursuant to § 548, which is the action sought in Count III of the Complaint, then the Trustee may be successful in denying Liberty Bank's claim under § 502(d).

Because the Court has found that the Trustee has standing to pursue the cause of action based on § 548 that is found in Count III of the Complaint, the Court finds that the Trustee has standing to pursue the cause of action based on § 502(d) that is found in Count V of the Complaint.

### III. Conclusion

For the reasons set forth above, the Court finds that Defendant Liberty Bank's Motion to Dismiss should be granted, in part, and denied, in part. Because the Trustee has been ordered to abandon any interest the estate had in the shares of BBI and FEI stock owned by Debtor Aaron Buerge, the Trustee does not have standing to avoid or otherwise attack the purported security interest held by Liberty Bank in that property. Similarly, the Trustee does not have standing to seek turnover of the stock certificates held by Liberty Bank because the estate no longer has any interest in the stock. However, the Trustee does have standing to avoid fraudulent transfers of property under § 548 and under the Uniform Fraudulent Transfer Act as conditioned previously,

- 18 -

13.10.15-A Buerge MTD Liberty Bank.wpd

Case 13-06015    Doc# 18    Filed 10/15/13    Page 18 of 19

and the abandonment of the BBI and FEI stock does not deprive the Trustee of seeking to avoid, and preserve for the benefit fo the estate, the security interest that Aaron granted to Liberty Bank pre-petition. Because the Trustee may be successful in avoiding the allegedly fraudulent transfer to Liberty Bank, the Trustee has standing to assert a claim under § 502(d).

**It is, therefore, by the Court ordered** that Defendant Liberty Bank's Motion to Dismiss is granted in part and denied in part. The motion is granted as to Counts I, II, and IV of the Complaint. Judgment will be entered in favor of the Defendant on those counts. The motion is denied as to Counts III and V of the Complaint.

IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS